```
                    United States District Court
                      District of Massachusetts
 _____
                               )
WILLIAM F. GLACKEN,            )
                               )
          Plaintiff,           )
                               )
          v.                   )    Civil Action No.
                               )    18-11443-NMG
NANCY A. BERRYHILL,            )
                               )
          Defendant.           )
 _____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

William Glacken ("Glacken" or "plaintiff") seeks judicial review of the denial of his application for disability insurance benefits by Nancy A. Berryhill ("the Commissioner" or "defendant"), the Acting Commissioner of the Social Security Administration ("the SSA"). Pending before the Court are plaintiff's motion for an order reversing the Commissioner's decision (Docket No. 11) and defendant's motion to affirm that decision (Docket No. 12). For the reasons that follow, plaintiff's motion will be denied and the Commissioner's motion will be allowed.

I. <u>Background</u>

  A. Employment History and Alleged Disability

Glacken was born in 1961. He has at least a high school education and served in the armed forces during the 1980s.

After military service, Glacken worked in customer service at Home Depot in the plumbing department. He also worked as a truck driver delivering cheese to local grocery stores. In May, 2008, Glacken suffered his first heart attack. That is the alleged onset date for purposes of his application for disability insurance benefits. Glacken attempted to work for a short period during the summer of 2011 as a dump truck driver delivering mulch to local nurseries but was forced to stop because of his alleged physical impairments. He has not attempted to work since that time and has not engaged in any substantial gainful employment since his alleged onset date.

Medical reports from September, 2012, to November, 2013, establish that Glacken suffers from type II diabetes, hypertension, chest pain from coronary heart disease, high cholesterol and hereditary hemochromatosis (the excessive build-up of iron in the body). He was also diagnosed with degeneration of the cartilage or meniscus of the knees during that time period and was taking pain medication. His hemochromatosis was reported as stable and cardiovascular examinations demonstrated no heart murmurs and normal rate and rhythm.

In October, 2013, Glacken reported that he had been caring for his 14-month old grandson despite his various medical issues. A physical examination at that time revealed no cardiac

issues. He reported experiencing some knee pain but demonstrated normal gait and no focal deficits. He was advised to see a hematologist for his high iron level.

In November, 2014, Glacken was diagnosed with major depressive disorder. He did not begin treatment for his depression, however, until October, 2015, when he began attending individual therapy sessions and medication management. Mental status examinations performed thereafter were unremarkable and demonstrated that plaintiff was alert and fully oriented and had no cognitive impairments. Glacken requested evaluation for symptoms of post-traumatic stress disorder ("PTSD") in March, 2016.

In February, 2017, plaintiff suffered a second heart attack and a pacemaker was installed in his chest a few weeks later.

**B. Medical Opinions**

In October, 2015, Glacken had a consultative examination with Alice Armstrong, Ph.D ("Dr. Armstrong"). Her physical and mental examinations of plaintiff were unremarkable. She found no impairment of judgment in daily activities or social situations but did note that he reported a trend toward social isolation and somatic focus. She concluded that he had a mild to moderate level of depression that seemed to be secondary to his knee pain and heart concerns. Glacken scored a 28 out of 30 on a Mini Mental Examination and was assessed a Global

Assessment of Functioning ("GAF") score of 55, indicating moderate psychological symptoms and limitations in social or occupational functioning.

In December, 2015, a state agency consultant reviewed plaintiff's mental health records and determined that his alleged mental disability was not severe prior to his date last insured. She also opined that he had mild limitations in social functioning and maintaining concentration, persistence and pace. In April, 2016, another state agency consultant reviewed plaintiff's mental health records and affirmed the earlier conclusion.

In March, 2016, another state agency consultant reviewed plaintiff's medical records and determined that he could perform work activity at the light exertional level with the additional exertional, postural and environmental limitations of: 1) occasionally lifting and/or carrying 20 pounds; 2) frequently lifting and/or carrying 10 pounds; 3) standing and/or walking no more than 4 hours in an 8-hour work day; 4) sitting no more than a total of 6 hours in an 8-hour work day; 5) occasionally climbing ramps or stairs; 6) never climbing ladders, ropes or scaffolds; 7) occasionally balancing, stooping, kneeling, crouching and crawling; 8) avoiding concentrated exposure to extreme cold, extreme heat, vibration, fumes, odors, dusts,

gases and poor ventilation; and 9) avoiding even moderate exposure to hazards, including machinery and heights.

In April, 2017, plaintiff's treating cardiologist, Dr. Sherif Labib, determined that Glacken was disabled from his second heart attack in February, 2017, and that his disabilities emanating from that incident were permanent.

C.  **Application for Disability Insurance Benefits**

In June, 2015, plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 416(i) and 423(d). Glacken's application was predicated on his claims of hemochromatosis, ischemic heart disease, bilateral knee osteoarthritis, major depressive disorder and PTSD. His application was denied in December, 2015, and, upon reconsideration, further denied in April, 2016. He requested a hearing before an Administrative Law Judge ("ALJ") in May, 2016, and the hearing was held in May, 2017, before ALJ William Ross who published his decision in September, 2017.

D.  **The ALJ's Decision**

Applying a five-step sequential evaluation process, the ALJ determined that Glacken is not disabled under Sections 216(i) or 223(d) of the Act. The ALJ relied upon testimony presented at the disability hearing as well as medical reports and opinions from doctors and state agency consultants.

As an initial matter, the ALJ determined that plaintiff satisfied the insured status requirements through December 31, 2014 ("the date last insured"), which meant that he had to establish that his disability existed on or before that date to be entitled to disability insurance benefits. See 42 U.S.C. § 423(a)(1)(A), (c)(1).

At step one, the ALJ determined that Glacken was not engaged in substantial gainful employment and had not been so employed since his alleged onset date of May, 2008.

At step two, the ALJ decided that Glacken had the following severe impairments: 1) hemochromatosis, 2) ischemic heart disease and 3) bilateral knee internal derangement/osteoarthritis.  The ALJ found that plaintiff's claimed mental impairments of major depressive disorder and PTSD were not severe because they did not cause more than minimal limitations on his ability to perform basic work activities. The ALJ made that determination based on the fact that: 1) plaintiff was initially diagnosed with depressive disorder in November, 2014, but did not seek treatment for nearly one year thereafter; 2) his mental status examinations were unremarkable and he displayed no perceptual impairments; 3) he was able to perform daily activities adequately, including watching television, playing video games, managing his finances, preparing simple meals, attending medical appointments, taking

public transportation, driving and shopping.  In finding that plaintiff's mental impairments were not severe, the ALJ gave little weight to the opinion of Dr. Armstrong because 1) her assessment was performed well after the date last insured and did not address his mental functioning prior to that date and 2) her opinion with respect to plaintiff's mental limitations was inconsistent with his mental health treatment history and other evidence.

At step three, the ALJ determined that, although plaintiff has severe impairments, none met or medically equaled the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526.

Before proceeding to step four, the ALJ considered Glacken's residual functional capacity ("RFC"), meaning his ability to perform physical and mental work activities on a sustained basis despite the limitations resulting from his impairments.  The ALJ concluded that Caterino has the RFC to perform light work with the following additional limitations: 1) he can lift and carry only 20 pounds occasionally and 10 pounds frequently; 2) he can sit for 6 hours and stand or walk for 4 hours in an 8-hour work day; 3) he cannot climb ladders, ropes or scaffoldings; 4) he can occasionally kneel, stoop, balance, crouch, crawl and climb ramps and stairs; and 5) he must avoid concentrated exposure to extreme heat, extreme cold, wetness,

humidity, vibration, fumes, odors, dusts, gases and poorly ventilated areas and any exposure to unprotected heights and dangerous machinery.  In determining plaintiff's RFC, the ALJ considered both the objective medical evidence as well as his subjective complaints regarding the intensity, persistence and limiting effects of his symptoms.

While finding that plaintiff had medically determinable impairments that limited his ability to work, the ALJ also decided that Glacken's complaints with respect to the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the objective medical evidence and other evidence in the record.  The ALJ thus accorded those subjective statements limited weight.

The ALJ emphasized that plaintiff's ischemic heart disease and hemochromatosis had been adequately treated prior to his date last insured and the physical examinations with respect to his heart had been normal.  Furthermore, the treatment of plaintiff's hemochromatosis and knee osteoarthritis had been conservative.  Physical examinations of his knees had been unremarkable, revealing a normal gait and no focal deficits, and his hemochromatosis had been reported to be stable as late as April, 2013.  The ALJ concluded that the overall medical evidence did not support the degree of functional limitation alleged by plaintiff.

Furthermore, the ALJ found that Glacken was able to engage in various daily activities that demonstrated a higher degree of functioning than he admitted.  Specifically, he was able to care for his 14-month old grandson which was demanding both physically and emotionally.

The ALJ gave little weight to the medical records and opinions that occurred after December, 2014 (the date last insured), including the opinion of plaintiff's treating cardiologist, Dr. Labib, because they were irrelevant to plaintiff's disability prior to that date.  The ALJ gave significant weight, however, to the opinions of the state agency medical consultants because they were supported by and consistent with 1) the unremarkable physical and neurological examinations, 2) plaintiff's conservative and inconsistent treatment history and 3) his daily activities.

At step four, the ALJ determined that Glacken did not have the RFC to perform his past relevant work as dump truck driver, delivery driver and customer clerk.

At the final step, the ALJ determined that, considering the plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that he could perform.  Specifically, the ALJ decided, with the help of a vocational expert, that Glacken has the RFC to perform the requirements of a bench assembler, production solderer and

buffing machine tender.  Based on that finding, the ALJ concluded that Glacken was not disabled and thus ineligible for disability insurance benefits.  At the disability hearing, the vocational expert also testified, however, that if plaintiff were found to be off task 15 percent of the workday in addition to normal scheduled breaks or required to take more than a few sick days per month, he would be precluded from all work.  That would have necessitated a finding by the ALJ that Glacken is disabled.

Glacken timely appealed the decision of the ALJ to the Appeals Council.  In May, 2018, the Appeals Council denied his appeal, rendering the ALJ's decision the final decision of the Commissioner.

**E.   District Court Action and Parties' Arguments**

In July, 2018, Glacken filed his complaint in this case. Thereafter, he filed a motion for an order reversing the Commissioner's decision.  He contends that the ALJ erred in finding that his alleged depressive disorder and PTSD were not severe impairments.  He asserts that his testimony that he suffered several years with severe depression prior to his date last insured should have been credited despite the lack of mental health records in that regard.

Moreover, he suggests that the medical records from after the date last insured reflect that he had isolated himself

inside his home during the relevant time period.  He contends that such isolation is consistent with symptoms of major depression.  Plaintiff also alleges that the ALJ improperly discounted the opinion evidence of Dr. Armstrong who found that he had at least moderate mental impairments.  Finally, plaintiff claims that the ALJ failed to address the testimony of the vocational expert that he would be precluded from work if he were found to be off task 15% of the work day or if he were required to be absent more than a few times per month.

In response to plaintiff's motion, defendant filed a motion to affirm the Commissioner's decision.  The Commissioner maintains that there is substantial evidence to support the ALJ's determination that Glacken did not have severe mental impairments prior to his date last insured based on 1) the lack of mental health treatment during the relevant period, 2) unremarkable mental status examinations and 3) the opinions of the state agency consultants who reviewed the relevant evidence.

## II. Pending Motions

### A. Legal Standard

The Act gives United States District Courts authority to affirm, modify or reverse an ALJ's decision or to remand the case for a rehearing. 42 U.S.C. § 405(g).  A District Court's review of an ALJ decision is not, however, de novo. See Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir.

1981).  The Act provides that the findings of the Commissioner are conclusive if 1) they are "supported by substantial evidence" and 2) the Commissioner has applied the correct legal standard. See 42 U.S.C. § 405(g); Seavey v. Barhart, 276 F.3d 1, 9 (1st Cir. 2001).  If those criteria are satisfied, the Court must uphold the Commissioner's decision even if the record could justify a different conclusion. Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987).  Substantial evidence means evidence "reasonably sufficient" to support the ALJ's conclusion. Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998).

**B.   Application**

After reviewing the record, the Court concludes that the Commissioner's decision is supported by substantial evidence and that the correct legal standard was applied.  The ALJ properly found that Glacken's alleged mental impairments were not severe during the relevant time period.

First, Glacken did not seek treatment for his depression for nearly one year after it was first diagnosed. See Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (explaining that gaps in treatment are evidence that an impairment is not as severe as alleged); Fortin v. Colvin, Civil Action No. 3:16-cv-30019-KAR, 2017 WL 1217117, at *14 (D. Mass. Mar. 31, 2017) (holding that "[t]he lack of mental health

-12-

treatment supports the ALJ's finding that Plaintiff did not suffer from a mental impairment that impacted his RFC").

Second, Glacken's mental status examinations even after his date last insured remained unremarkable. See Ortiz v. Colvin, Civil Action No. 3:15-cv-30215-KAR, 2017 WL 1015006, at *9 (D. Mass. Mar. 15, 2017) (finding that consistent positive evaluations of thought processes, judgment and insight and descriptions of euthymic mood supported the ALJ's determination that the plaintiff's depression was not severe); Tucker v. Astrue, Civil Action No. 11-30115-KPN, 2011 WL 7639240, at *4 (D. Mass. Mar. 27, 2011).

Third, Glacken's ability to perform significant daily activities, including caring for his young grandson and managing his personal care, demonstrated that his alleged depression and PTSD were not severely limiting. Coskery v. Berryhill, 892 F.3d 1, 7 (1st Cir. 2018) (holding that the ALJ properly considered the plaintiff's ability to engage in daily activities in finding that he was able to perform light work).

Finally, the ALJ was entitled to give significant weight to the assessments of the state agency consultants who, based on the medical evidence, determined that Glacken's alleged mental impairments were not severe. Berrios-Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991) (explaining that testimony of a non-examining medical advisor can constitute

-13-

substantial evidence in support of the ALJ's determination). Those opinions were consistent with plaintiff's treatment history and the record as a whole. See 20 C.F.R. § 404.1527(c)(3)-(4).

Despite evidence that plaintiff isolated himself inside his home for some period of time, the Court finds that the evidence is reasonably sufficient to support the ALJ's determination that Glacken's alleged mental impairments were not severe.

The ALJ also appropriately discounted the opinion of Dr. Armstrong with respect to Glacken's mental impairments because it was inconsistent with her own findings that his mental examination was unremarkable and that he displayed no impairment of judgment in his daily activities. See Arruda v. Barnhart, 314 F. Supp. 2d 52, 72 (D. Mass. 2004); see also 20 C.F.R. § 404.1527(c)(3)-(4). Moreover, her opinion was rendered almost one year after plaintiff's date last insured and did not address the seriousness of his mental condition during the relevant time period. See Deblois v. Sec'y of Health & Human Servs., 686 F.2d 76, 80 (1st Cir. 1982). Accordingly, Dr. Armstrong's opinion has little bearing on plaintiff's disability determination.

Furthermore, the ALJ did not err by failing to address the vocational expert's testimony that an individual with plaintiff's limitations would be precluded from work if he were off task 15% of the time or absent several times per month. The

burden is on plaintiff to demonstrate that he suffers from a particular limitation and he has not directed the Court to any evidence showing that he suffers from those additional limitations. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so."); De Oliveira v. Colvin, Civil Action No. 14-12629-DJC, 2016 WL 3460313, at *11 (D. Mass. June 20, 2016) (holding that the ALJ did not improperly ignore vocational expert testimony about the effect of certain limitations where the ALJ rejected the opinions forming the basis for that testimony as inconsistent with the record as a whole).

Accordingly, the ALJ's determination that Glacken did not suffer from severe mental impairments during the relevant time period is supported by substantial evidence. The Commissioner's decision will therefore be affirmed.

## ORDER

For the foregoing reasons,

1) plaintiff's motion for an order reversing the Commissioner's decision (Docket No. 11) is **DENIED** and

2) defendant's motion to affirm the Commissioner's decision (Docket No. 12) is **ALLOWED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated May 21, 2019